IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Lisa Romain, Stacey Gibson, Joanika Davis, Schevella Robertson, Jericho Macklin, Dameion Willams, Brian Trinchard, on Behalf of Themselves and All Others Similarly Situated, | Civil Action No. 2:15-cv-06942-KDE-SS |
| Plaintiffs, | |
| v. | **CLASS ACTION** |
| SUZY SONNIER, in her official capacity as Secretary of Louisiana Department of Children and Family Services, | |
| Defendant. | |

Marc Cohan declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

## INTRODUCTION

1.   I am a the Director of Litigation for the National Center for Law and Economic Justice ("NCLEJ") and am admitted to the Bar of the State of New York.  I am fully familiar with the facts stated in this declaration.

2.   NCLEJ assisted plaintiffs' Louisiana counsel in the interviewing of plaintiffs and witnesses, the gathering of evidence, the researching of questions of law, and the preparation and filing of the complaint and all other papers filed in this matter through the date of this declaration. At all times, NCLEJ operated under the direct supervision of counsel admitted in the State of Louisiana and in the Eastern District of Louisiana.

3.   I make this declaration in support of plaintiffs' motion for an award of attorney's fees and costs.

4.    Because a motion for attorney's fees and costs must be filed within fourteen days from the entry of the Order that makes the plaintiffs' prevailing parties, the parties have not had time to negotiate a possible settlement of plaintiffs' motion for fees and costs.  However, plaintiffs' counsel remains available to so do and would consent to the granting of additional time to Defendant to respond to this motion in order to facilitate possible settlement of the fees application.

### THE ROLE OF NCLEJ

5.    NCLEJ is a national non-profit organization dedicated to advancing the cause of economic justice for low-income families, individuals, and communities across the country.

6.    Among other things, NCLEJ's practice focuses on improving access to benefits under the federal Supplemental Nutrition Assistance Program ("SNAP"), and NCLEJ works collaboratively with colleagues across the country, such as those in Louisiana, to assist individuals and households in enforcing their federal statutory rights under SNAP.

7.    NCLEJ was brought into this action, in large partn due to its expertise in public benefits programs, including the food stamp program. In the past decade, some of the jurisdictions where NCLEJ has litigated and secured relief concerning the processing of benefit applications, including food stamps, are:

> *Arizona* - Settled class action
>
> *California* - Pre-litigation settlement
>
> *Colorado* - Settled following preliminary injunction
>
> *Connecticut* – Preliminary Injunction granted
>
> *Hawaii* – Preliminary Injunction Granted
>
> *Indiana* - Consent Preliminary Injunction

*Maryland* – Judgment in favor of plaintiffs following trial

*New York City* (food stamps for TANF applicants and emergency assistance) - Judgment for plaintiffs after a trial

*New York City* - (food stamps for non-TANF applicants - Settled after denial of motion to dismiss

*New York State* - (five actions outside New York City) - All settled

*Rhode Island*  - Consent Preliminary Injunction

8.      In addition to acquiring expertise in issues such as public benefit statutes and regulations, program administration, and data concerning SNAP administration, NCLEJ has also developed unique experience in the tools that different states and localities are employing to address systemic processing issues in SNAP administration. We are able to assess the steps (including policy changes, practice reforms, and staffing enhancements) that a state may or may not be taking to remediate its non-compliance with Food Stamp Act and implementing regulations and to use that knowledge for both settlement and, if necessary, litigation. And, if litigation is successful, NCLEJ's unique knowledge is useful in shaping the ultimate remedy.

9.      In addition, NCLEJ is a nationally recognized leader in the litigation of claims under the Due Process Clause as they relate to public benefits as early as the landmark win in *Goldberg v. Kelly*, 397 U.S. 254 (1970).

10.      Consequently, NCLEJ's experience and expertise allowed the putative Class to prosecute this action more efficiently and expeditiously than would otherwise have been possible.

**HISTORY OF ACTION**

11.     On December 18, 2015, Plaintiffs commenced this action (DKT # 1), on behalf of themselves and all others similarly situated, to challenge Defendant's policies and practices of terminating individuals' Supplemental Nutrition Assistance Program ("SNAP"), commonly known as food stamps, without the notice and procedures mandated by the Food Stamp Act and implementing regulations and the Due Process Clause and to assure Defendant's fair and lawful application of the SNAP time limit.

12.     Plaintiffs sought declaratory and permanent injunctive relief to enjoin Defendant, in her official capacity as Department Secretary, from terminating SNAP benefits without complying with Due Process and federal law.

13.     Further, plaintiffs sought a temporary restraining order and preliminary injunction to stay Defendant from terminating SNAP for any ABAWD household based on the application of the three month limit until such time as she could demonstrate to this Court that her agency can operate the ABAWD program in conformity with the Food Stamp Act, implementing regulations, and the Due Process Clause of the United States Constitution.

14.     The named Plaintiffs and the class they sought to represent are indigent adult recipients of SNAP who were threatened with termination of their SNAP benefits, effective January 1, 2016, by Defendant's agency, the Louisiana Department of Children and Family Social Services.

15.     These terminations resulted from the Defendant's flawed and hasty implementation of a complex federal law limiting SNAP benefits to three (3) months in a thirty-six (36) month period for adults who are determined to be "Able-Bodied Adults without Dependents" ("ABAWD"), unless the adult meets defined work requirements.

4

16.     For eighteen years, Defendant and her predecessors consistently sought and obtained a waiver of the ABAWD requirements from the United States Department of Agriculture.  The waiver was based on the state's high unemployment.

17.     Early in 2015, Defendant chose, for the first time, notwithstanding a continuing high unemployment rate, to not renew the waiver. As a consequence, the waiver expired on September 30, 2015 and ABAWDs throughout the state became subject to the work requirements for the first time in 18 years.

18.     However, as detailed in the Complaint and other filings, Plaintiffs alleged that Defendant failed to ensure that her agency was equipped to handle the more than 62,000 SNAP recipients who would, all on October 1, 2015, become subject to the ABAWD requirements.

19.     As a consequence, Plaintiffs' asserted that Defendant's  threatened terminations of SNAP results from her agency's unlawful pattern and practices of failing to assure that only those properly subject to the time-limit are terminated by: a) failing to provide adequate notice of the termination of SNAP, effective January 1, 2016 to plaintiffs and those similarly situated; b) failing to provide adequate notice to plaintiffs and those similarly situated of the applicable requirements and exemptions and the processes by which individuals can claim exemptions from the ABAWD work requirements and/or show they are meeting such work requirements; and c) failing to fairly investigate, assess, and determine whether individuals are properly subject to the ABAWD time limit.

20.     On or about December 21, 2015, Plaintiffs informed this Court that the Governor-elect, John Bel Edwards, had written to the United States Department of Agriculture to say, inter alia, "It is my intention, once in office, to extend the ABAWD waiver statewide for Fiscal Year 2016." Plaintiffs further advised the Court that the parties were in negotiations to attempt to

settlement the matter in light of the Governor-Elect's decision to seek to reinstate the ABAWD

waiver.

21.     Accordingly, on December 22, this Court issued an Order (DKT # 10), which

provide 'that 'Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction'

(Rec. Doc. 3) is DENIED WITHOUT PREJUDICE."

22.     On January 8, 2016, the parties submitted a Stipulation and Order of Settlement

("Order of Settlement") (DKT # 11), which was ordered by this Court on January 19, 2016.

(DKT # 12).  The Order of Settlement provides in relevant parts:

1.  In the event that the United States Department of Agriculture grants an
    ABAWD waiver in time for Defendant to ensure that SNAP benefits to which
    plaintiffs and the members of the putative class are entitled for the month of
    January 2016 are issued in January 2016, Defendant shall:

    a.  Take all steps necessary to ensure that SNAP benefits due for January
        2016, are issued no later than January 22, 2016 in accordance with
        federal law and regulations;

    b.  Take all steps necessary to ensure that the three-month ABAWD
        limitation period does not commence for the case of each named
        plaintiff and member of the putative class in accordance with federal
        law and regulations; and

    c.  Issue notice to named plaintiffs and members of the putative class
        advising them of the actions that will be taken in conformity with the
        granting of the waiver and this Stipulation and Order of Settlement.

23.     Having secured by the Order of Settlement the relief sought in this action,

namely, an Order that would hold plaintiffs and the members of the plaintiff class harmless and

that would require Defendant to fully reinstate the SNAP of Plaintiffs and the putative class,

Plaintiffs, as prevailing parties, hereby move this Court for an award of attorneys' fees and costs

pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d) in the amount of $136,253.25 in

attorneys' fees and $1,888.47 in costs.

**FEES AND EXPENSES INCURRED BY THE NATIONAL CENTER FOR
LAW AND ECONOMIC JUSTICE**

24.  Attached as Exhibits A is a Master Chart of all the time spent by all the attorneys in this matter.  The charts show the hourly rate requested, the hours worked, and reflects an across the board 10% reduction to account for inadvertent duplication.

25.  Attached as Exhibits B, C, D, E, and F hereto to are copies of itemized time records for the attorneys employed by NCLEJ.  The time records reflecting my work are accurate and reflect time which I personally spent on this case through the date of this declaration.  The work of the other NCLEJ attorneys on this action was at all times under my direct supervision.

26.  The time records accompanying my declaration are prepared contemporaneously by myself and my colleagues.

27.  Each attorney records all of his or her compensable time on each matter on an Excel spreadsheet, which identifies the date, the start and end times, the name of the case or other matter, and a description of the work performed during the time recorded.  When it becomes necessary to submit time records regarding a specific case or matter, the data maintained for that specific matter is copied and entered into a separate Excel spread sheet.

28.  Annexed as Exhibit G are resumes of all NCLEJ attorneys who spent time in this matter.

29.  I have engaged in billing judgment and have deleted from my own time records as well as those of my colleagues certain time, such as time spent addressing purely press issues or compiling the fee records. The amount for fees specifically sought by NCLEJ is $86,314.50.

30.  NCLEJ seeks $1,488.57 as total costs through the date of approval of the Settlement Order.  These costs reflect the expenses involved in two NCLEJ lawyers traveling to Louisiana to work directly with and under the supervision of local counsel to interview witnesses and

7

plaintiffs and to prepare declarations and gather documentary and other evidence. As additional

$400.00 is sought as reimbursement for the filing fee.

31.  Exhibit H reflects the travel expenses.

**A. Work Counsel Has Done in Identifying and Litigating the Claims**

32.  The work NCLEJ counsel undertook to identify and investigate claims has been

extensive.  Prior to filing suit in December 2015, NCLEJ staff reviewed documents and engaged

in legal research.

33.  NCLEJ staff interviewed various advocacy organizations in Louisiana with

knowledge of problems residents faced as a result of the elimination of the ABAWD waiver.

34.  NCLEJ staff also traveled to the state of Louisiana to directly assist local counsel in

the interviewing of many needy SNAP recipients who described problems with defendant's

implementation of the ABAWD requirements.

35.  NCLEJ staff had primary responsibility for the drafting of all papers in this action

for review by local counsel with the exception of certain individual plaintiff and witness

declarations.

36.  NCLEJ staff bore primary responsibility for providing local counsel with

information about the operation of the Food Stamp (SNAP) program and legal analysis of the

Food Stamp Act and the implementing regulations.

**B.  The Fees Sought Are Reasonable and Appropriate**

37.  The fees and costs are reasonable and represent the time and costs associated with

preparing, litigating, negotiating and settling this complex action.  Plaintiffs' counsel exercised

billing judgment in this action.  Multiple attorneys were needed because of the time pressures

presented by seeking a class-wide injunction and because the action involved benefits for the needy.

38.   In this case, work was allocated by experience and attorneys were assigned based also on prior experience and skill level. Thus, for example, where practicable, senior level counsel did not initially interview prospective plaintiffs and prospective witnesses.

39.   Work was also divided based on expertise and familiarity with the law and factual issues.

40.   In short, this case was litigated leanly and very quickly.  A comprehensive settlement was achieved in fewer than three weeks from the filing of the complaint and this Court so ordered the settlement thereafter.

41.   Here, it was in the interest of the putative plaintiff class for plaintiffs' counsel to proceed expeditiously and to not waste time or resources on delay or unnecessary litigation tactics.  On the issue of billing judgment, defendant reaps the benefit of plaintiffs' interest in a streamlined and expeditious litigation model.

42.   The rates for legal services charged by NCLEJ are reasonable, and are, based on the information set forth in the Memorandum of Law, commensurate with the billing rates of other law firms in the jurisdiction of this Court.

WHERFORE, your declarant respectfully requests that the motion be granted.


Dated:        February 2, 2016
              New York, New York



                                                    *Marc Cohan*
                                                    Marc Cohan


9