UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LISA ROMAIN, ET AL. | CIVIL ACTION |
| VERSUS | No: 15-06942 |
| SUZY SONNIER, in her official capacity as Secretary of Louisiana Department of Children and Family Services | SECTION: "J" (1) |

## ORDER & REASONS

Before the Court is Plaintiffs' *Motion on Quantum of Attorneys' Fees* **(Rec. Doc. 44),** an opposition thereto by Defendant (Rec. Doc. 48), and a reply by Plaintiffs (Rec. Doc. 50). Plaintiffs move for an award of attorneys' fees and costs in the amount of $254,327.00 in fees and $4,444.72 in costs. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**, but with a slight reduction in the quantum of fees.

## FACTS AND PROCEDURAL BACKGROUND

The Court assumes the reader's familiarity with this case and provides only a brief account of the relevant facts and procedural history. Plaintiffs are a "prevailing party" seeking reasonable attorneys' fees and costs under 42 U.S.C. § 1988 against Defendant, the Secretary of the Louisiana Department of Children and Family Services ("Department"). *Romain v. Walters*, 856 F. 3d 402, (5th. Cir. 2017). All Plaintiffs are Louisiana residents who are eligible for Supplemental Nutritional Assistance Program ("SNAP") benefits so long as Louisiana applies for a SNAP "work

requirement" waiver from the federal government. If, however, Louisiana fails to apply for the waiver then the Plaintiffs would lose their benefits. In September of 2015, the Department informed Plaintiffs that Louisiana, under the guidance of then Governor Bobby Jindal, would not be seeking a work requirement waiver for 2016.

On December 18, 2015 Plaintiffs sued in attempt to prevent Louisiana from terminating their SNAP benefits by failing to file the work requirement waiver. On December 21, 2015, Governor-Elect John Bel Edwards wrote a letter to the federal government stating his intention to reverse Governor Jindal's decision by applying for the work requirement waiver as soon as he took office on January 11, 2016. In his letter, he "requested the USDA to work with [Louisiana] 'to ensure that there is no gap in benefits until the waiver can be formally extended after I take office [on January 11, 2016],' and stated that 'I am willing to work with your office and [the Department] to ensure these benefits are not cut off on December 31st.'" *Id*.

Considering Governor-Elect Edwards' intentions, Plaintiffs entered into a Settlement Order with the Department that contained three specific orders affecting the relationship between the parties.[1] *Id*. If the waiver was granted and the Defendant complied with all three orders, then Plaintiffs' complaint would be dismissed with prejudice. Plaintiffs then filed their Motion for Reasonable Attorneys' Fees and Costs, believing the Settlement Order was sufficient to make them the

---

[1] The three orders were as follows: "a) '[t]ake all steps necessary to ensure that SNAP benefits due for January 2016, are issued no later than January 22, 2016 in accordance with federal law and regulations'; (b) take steps to make sure the three-month work requirement limitation period did not commence for Plaintiffs and members of the class; and (c) issue notice to Plaintiffs and members of the class of the actions taken in conformity with the grant of the waiver and the Settlement Order." Romain, 856 F.3d 405.

prevailing party. The district judge then assigned to the case denied the motion, stating that Plaintiffs were not a prevailing party within the meaning of § 1988. Subsequently, Plaintiffs appealed the decision and the Fifth Circuit overturned, holding that Plaintiffs were the Prevailing Party due to the Settlement Order. On remand the case was transferred to the undersigned for the first time. The sole remaining issue before the Court on remand was whether there exists any "special circumstances" that would render awarding attorneys' fees to Plaintiffs under § 1988 unjust. *Id.* at 407.

On October 2, 2019, the Court issued an Order and Reasons holding that there existed no special circumstances rendering an award of attorneys' fees to Plaintiffs unjust. (Rec. Doc. 42). The final issue before the Court is a determination of the precise quantum of fees Plaintiffs are entitled to.

## **DISCUSSION**

To begin, "it is settled that a prevailing plaintiff is entitled to attorneys' fees for the effort entailed in litigating a fee claim and securing compensation. *Cruz v. Hauck*, 762 F.2d 1230, 1233. (5th. Cir. 1985). This includes Plaintiffs' post-appeal briefing as ordered by this Court. *Id.* at 1234. Plaintiffs are also entitled to attorneys' fees incurred as part of their appeal to vindicate their fee rights. *See Hines v. City of Albany*, 862 F.3d 215, 221 (2nd Cir. 2017) (holding that the district court should have awarded the plaintiff appellate attorneys' fees under Section 1988 after initial remand); *see also Seyler v. Seyler*, 678 F.2d 29, 30 (5th.Cir. 1982) (discussing the

3

remand of a case to the district court to determine the reasonable amount of attorneys' appellate fees).

To calculate the precise dollar amount of attorneys' fees to which Plaintiffs are entitled, the Court uses the "lodestar" figure. *Louisiana Power & Light Co. Kellstrom*, 50 F.3d 319 (5th. Cir. 1995). To arrive at the lodestar figure, the Court "multiplies the number of hours reasonably expended in the case by the prevailing hourly rate for legal services in the district." *Hernandez v. U.S. Customs and Border Protection Agency*, No. 10-4602, 2012 WL 398328 (E.D. La. Feb. 2012). After calculating the lodestar figure, the Court has the discretion to adjust the final award based upon a consideration of the *Johnson* factors. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th. Cir. 1974). These factors include the following:

1) the time and labor required;
2) the novelty and difficulty of the issues presented;
3) the skill required to perform the legal skills properly;
4) the preclusion of other employment by the attorney due to acceptance of the case;
5) the customary fee;
6) whether the fee was fixed or contingent;
7) time limitations imposed by the client or the circumstances;
8) the amount involved and the result obtained;
9) the experience, reputation, and ability of the attorneys;
10) the undesirability of the case;

4

11) the nature and length of the professional relationship with the client; and

12) awards in similar cases.

*Id.* at 717-19. It should be noted that no one *Johnson* factor "is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation." *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

## I. THE NUMBER OF HOURS REASONABLY SPENT

The Court must first determine if the hours requested by Plaintiffs' counsel were reasonable considering the nature of the case and the work performed. The party seeking fees bears the burden of proving the reasonableness of the requested hours. *Mota v. Univ. of Tex. Houston Health Science Ctr.,* 261 F.3d 512, 528 (5th Cir.2001). Here, Plaintiffs have requested a total of $258,684.72, representing $254,237.00 in attorneys' fees and $4,447.72 in costs. This total reflects work done by four different legal representatives. During the initial stage of the class-action and post-remand proceedings, Plaintiffs were represented by William Quigley, Sima Atri,[2] and the National Center for Law and Economic Justice ("NCLEJ"). Attorneys Greg Bass, Marc Cohan, Mary Mannix, Fran Fajana, Leah Lotto, and Karina Tefft performed the work attributable to NCLEJ (Rec. Doc. 44-7). At the appellate stage of the proceedings, Plaintiffs were represented by the law firm of Quinn Emanuel. Attorneys Jennifer Selendy, Charles Eskridge, Ellyde Thompson, and Jonathan Sink

---

[2] Sima Atri worked at the New Orleans' Workers Center for Racial Justice during the litigation. At the tail end of proceedings, she was replaced by Mary Yannik.

performed the work attributable to Quinn Emanuel. (Rec. Doc. 44-6). In sum, Plaintiffs request 777.15 hours of attorneys' fees.

Defendant contends that Plaintiffs' totals should be reduced, given that the entire initial stage of litigation only took slightly longer than one month. The Court is not persuaded that the total hours reasonably expended in this case should be calculated with reference to the time frame of the initial litigation. The large quantity of hours incurred in such a relatively short time frame merely underscores the scope of Plaintiffs' undertaking. In roughly a month's timespan, Plaintiffs drafted a class action complaint and moved for class certification and injunctive relief on behalf of the seven named plaintiffs and a putative class. All of this had to be done quickly to prevent Plaintiffs' loss of SNAP benefits. Furthermore, Defendant's argument neglects the fact that a substantial number of Plaintiffs' hours were incurred attempting to recover attorneys' fees, which was entirely independent of the initial litigation.

Defendant further urges the Court to reduce Plaintiffs' requested hours because they "reflect duplication of efforts, excessive time spent on tasks, and too many lawyers being involved in work that could have been done by fewer." (Rec. Doc. 48). A court should exclude all time billed for work that is excessive, duplicative, or inadequately documented. *Jimenez v. Wood County, Tex.*, 621 F.3d 372, 379-80 (5th. Cir. 2010).

Having reviewed the applicable billing records, the Court finds that the records kept by counsel in this case are sufficiently clear and detailed to allow for adequate

review, and that the hours expended are reasonable under the facts of the case, albeit with one minor exception. The billing records submitted by Mr. Bass indicate that on December 11, 2015 Mr. Bass worked on "drafting the merits section of the preliminary injunction brief" from 10:30 a.m. until 6:34 p.m. for a total of eight hours and four minutes (Rec. Doc. 44-2 at 2-3). Yet Mr. Bass billed that time in overlapping increments such that the total requested hours for that time frame is fourteen hours and 54 minutes. *Id.* As there is no reasonable basis for this discrepancy, the Court will reduce Mr. Bass's requested hours by six.

Other than the reduction in Mr. Bass's hours, the Court can find no basis in the record to conclude that any of the hours requested are excessive, duplicative, or unnecessary. The Court's finding is buttressed by Defendant's inability to advance specific objections to any of Plaintiffs' billing records. *See McClure v. Mexia Independent School. Dist.*, 750 F.2d 396 (5th. Cir.1985) (holding that once a party seeking attorneys' fees has submitted itemized hours and expenses the burden shifts to the other party to present specific objections); *see also Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3rd. Cir. 1989) (the party opposing a fee motion "cannot merely allege in general terms that the time spent was excessive.") The Court is further persuaded by Plaintiffs' exercise of reasonable billing judgment by voluntarily reducing their total request by 10%, at least as regards the initial litigation. (Rec. Doc. 13-1 at 8.). As such, the Court finds a total of 771.15 hours expended reasonable for the work performed in this case.[3]

---

[3] This accounts for the six hours the Court deducted from Mr. Bass' requested hours.

## II. REASONABLENESS OF THE HOURLY RATE FOR EACH PARTICIPATING ATTORNEY

Attorneys' fees should be calculated at the "prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). The burden of proving the requested rate aligns with the prevailing market rates falls on the party seeking the attorneys' fees. *Wheeler v. Mental Health & Mental Retardation Auth. of Harris County, Tex.,* 752 F.2d 1063, 1073 (5th Cir.1985).

Here, Plaintiffs seek fees at an hourly rate of $450 for work performed by 1) William Quigley, 2) Marc Cohan, Greg Bass, and Mary Mannix of the NCLEJ, and 3) Jennifer Selendy, Charles Eskridge, and Ellyde Thompson of Quinn Emanuel. William Quigley is an extremely accomplished constitutional and civil rights attorney, with over thirty years of experience in federal courts. (Rec. Doc. 44-5). Cohan, Bass, and Mannix all possess over thirty years of public benefits litigation experience (Rec. Doc. 44-7). Selendy, Eskridge, and Thompson were all partners at Quinn Emanuel, a highly prestigious litigation law firm, where all three typically bill far in excess of the amount sought by Plaintiffs. (Rec. Doc. 44-6).

Plaintiffs seek additional compensation for the following: Francisca Fajana, a NCLEJ attorney with over 20 years of experience, at the rate of $400 an hour; Jonathan Sink, a Quinn Emanuel associate with an undisclosed amount of experience at the rate of $300;[4] Leah Lotto, a NCLEJ attorney with 10 years of experience at the

---

[4] Although unclear how much experience Mr. Sink possesses, his billing records indicate he typically bills at more than double the rate Plaintiffs' request. (Rec. Doc. 44-6).

rate of $250;[5] Sima Atri at the rate of $200 an hour; and Karina Tefft at the rate of $200 an hour.

In support of this request, Plaintiffs have cited three cases in which various sections of this Court awarded $450 attorneys' fees to highly qualified and experienced attorneys in this district. *See St. Joseph Abbey v. Castille*, No. 10-2717, U.S. Dist. LEXIS 183990 (E.D. La. Nov. 21, 2014); *Hornbeck Offshore Services, L.L.C. v. Salazar*, No.10-663, 2011 WL 2214765 (E.D. La. June 1, 2011); *H-S Intl., Inc. v. Abo Ventures, Inc.*, No. 15-3063, WL 614698 (E.D. La. Feb. 16, 2016). Plaintiffs have also submitted the affidavit of Mr. Quigley, who avers that $450 is a reasonable fee for someone of his expertise and experience (Rec. Doc. 44-5).

Defendant counters by citing the relatively low rates the Louisiana Department of Justice pays private attorneys when it outsources federal litigation. (Rec. Doc. 48). However, the fact that the government pays its attorneys at a low rate has "little relevance when determining an appropriate basis upon which to set plaintiff's counsel's rates." *Grantham v. Moffett*, No. 93-4007, 1996 WL 3750, (E.D. La. Jan. 1996) (citing *Mirabal v. General Motors Acceptance Corp.*, 576 F.2d 729, 731 (7th. Cir. 1978) Defendant cites no cases from this district to counter Plaintiffs' desired rates.

---

[5] There is some discrepancy in the rate sought by Ms. Lotto. In Plaintiffs' motion itself they ask for a $300 rate for Ms. Lotto, whereas the fee chart attached in Rec. Doc, 44-7 reflects a $250 rate. This is ultimately academic, as the Court is granting Plaintiffs' requested total minus the six-hour reduction.

Based on the foregoing, the Court finds that taken as a whole the requested rates are reasonable, although at the higher end of the prevailing market rates.

### III. APPLICATION OF THE *JOHNSON FACTORS*

The final lodestar figure, accounting for the six-hour reduction in Mr. Bass's expended hours, is $252,077.00. Although there is a strong presumption that the lodestar figure is reasonable, the Court ought still consider the *Johnson* factors before assessing a final quantum of attorneys' fees. *Heidtman v. County of El Paso, Tex.*, 171 F.3d 1038, 1043 (5th.Cir. 1999). This consideration need not be "meticulously detailed," yet all twelve factors must be clearly applied to the lodestar figure. *Saizan v. Delta Concrete Products Co. Inc.*, 448 F.3d 975 (5th. Cir. 2006). If a *Johnson* factor has already been considered in the calculation of the lodestar figure, the Court need not contemplate further adjustments on that basis. *Id.*

In the present case, after careful consideration of each of the *Johnson* factors, the Court finds there is no further need to adjust the lodestar figure.

#### 1) Time and Labor Required

Plaintiffs were forced to initiate litigation and push it forward at a relatively breakneck pace to ensure they maintained their access to SNAP benefits. The Court finds this factor confirms the reasonableness of the lodestar figure.

#### 2) Novelty and Difficulty of the Issues Involved

The Court finds the legal issues presented in this case, namely the theory advanced by Plaintiffs regarding the interplay of federal due process law and the federal food stamp act, were both novel and difficult. Thus, application of this factor

supports the large number of research and analysis hours expended by Plaintiffs' counsel.

### 3) Skill Required

The Court finds that Plaintiffs' counsel skillfully handled the novel and difficult issues to obtain a positive result for Plaintiffs. This supports the lodestar figure.

### 4) Preclusion of Other Employment

Plaintiffs' counsel has not provided any evidence that that this case forced them to turn away other potential clients and cases due to the time and resources required.

### 5) Customary Fee

This factor was already accounted for in the Court's consideration of the lodestar figure.

### 6) Whether Fee is Fixed or Contingent

Plaintiffs' counsel provides no information as to whether the fee was fixed or contingent. Due to the public interest nature of the suit, it is likely the case was *pro bono*. Therefore, the Court need not consider this factor.

### 7) Time Limitations Imposed by the Client or Circumstances of the Case

Similar to the Court's analysis under the first *Johnson* factor, the expeditious nature of this suit left little time for unnecessary or redundant work, and therefore this factor further solidifies the reasonableness of the expended hours.

### 8) Amount Involved and Results Obtained

The degree of success obtained is the most important *Johnson* factor. *Abner v. Kansas City So. Ry. Co.,* 541 F.3d 372, 376–77 (5th Cir.2008) (citing *Johnson v. Ga. Highway Express,* 488 F.2d 714, 717–19 (5th Cir.1974)). Here, Defendant attempts to reiterate its arguments that efforts by Plaintiffs' counsel did not contribute to Plaintiffs' ultimate success. Yet the Court already decided that issue in its October 2, 2019 Order and Reasons. (Rec. Doc. 42).[6] Therefore, the Court finds that Plaintiffs' counsel achieved complete success for their clients, and the lodestar figure reflects an adequate level of compensation commensurate with that success.

### 9) Experience, Reputation, and Ability of Attorneys

This factor was already considered in the Court's calculation of the lodestar figure.

### 10) Undesirability of the Case

Plaintiffs argue this factor should apply because cases brought by low income single adults deprived of public benefits are not typically desirable. It is true this factor is most often applied in civil rights' cases, such as the present case. *See Cooper v. Pentecost*, 77 F.3d. 829 (5th. Cir. 1996). Nevertheless, the Court is unpersuaded by Plaintiffs' argument that Plaintiffs' counsel, many of whom have devoted their careers to public interest work and advancing the causes of similar situated plaintiffs, did not desire to take this case.[7]

---

[6] Just to reiterate, the clear statement by Governor Edwards' executive counsel shows that Plaintiffs' lawsuit, and thus by proxy the efforts by Plaintiffs' counsel, played at minimum a significant role in the Governor's decision ensure there was no stoppage of SNAP benefits.

[7] That conclusion does not apply to the attorneys at Quinn Emanuel.

**11) Nature and Length of Professional Relationship with Client**

This factor is intended to compensate attorneys who discount their fees to longstanding clients. *See Johnson,* 488 F.2d at 719. As Plaintiffs have provided no proof of any longstanding relationship between themselves and counsel, the Court will not apply this factor.

**12) Awards in Similar Cases**

This factor is neutral because the Court already considered awards of attorneys' fees in this district when calculating the lodestar figure.

Because it appears that none of the *Johnson* factors warrants an upward or downward adjustment from the lodestar amounts, the Court finds that the final lodestar figure of $252,077.00 is the correct award in this case.

### IV. COSTS AND EXPENSES

Plaintiffs are also entitled to recovery of "litigation costs reasonably incurred." 42 U.S.C. § 1988. Plaintiff seeks $4,444.72 in such costs. This total represents the $1,468.57 incurred by NCLEJ in flying Ms. Fajana and Ms. Lotto to Louisiana to assist in litigation efforts, combined with the $2,956.15 incurred by Quinn Emanuel during the appellate process. Defendant does not contest Plaintiffs' requested costs. Having reviewed the evidence submitted in support of this request, the Court concludes the expenses are sufficiently documented and will therefore award the Plaintiff the full $4,444.72 requested. (Rec. Doc. 44-6 and 44-7).

### **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiffs *Motion for Quantum of Attorneys' Fees and Costs* **(Rec. Doc. 44)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant shall remit payment to Plaintiffs in the amount of **$256,521.72**, representing $252,077.00 in attorneys' fees and $4,444.72 in litigation costs.

New Orleans, Louisiana this 7th day of November, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE